UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM A. BROWN, et al.,

    Plaintiffs,

v.                                                                                  CASE NO. 8:15-cv-325-T-23TGW

BOTTLING GROUP, LLC d/b/a THE
PEPSI BOTTLING GROUP, et al.,

    Defendants.
_____/

## **ORDER**

William Brown and Linda Hazlett-Brown sue (Doc. 60) Bottling Group,[1] Westfalia Logistics Technologies, and Westfalia Logistics Solutions Europe[2] for injuries William suffered while repairing a machine in Bottling Group's warehouse. Under Rule 14, Federal Rules of Civil Procedure, Bottling Group asserts (Doc. 61) a third-party complaint against Westfalia Technologies, Inc. (WTI), and WTI moves (Doc. 64) to dismiss.

---

[1] Bottling Group's third-party complaint (Doc. 61) alleges that Bottling Group is a wholly owned subsidiary of PepsiCo, Inc. (Pepsi).

[2] This order describes Westfalia Logistics Technologies and Westfalia Logistics Solutions Europe collectively as "Westfalia."

## BACKGROUND

According to the amended complaint's allegations, Bottling Group purchased from Westfalia two storage retrieval machines (SRMs) for Bottling Group's warehouse "as part of an automated storage and retrieval system." (Doc. 60 ¶ 7) An SRM features a motorized platform that lifts and lowers inventory vertically and transports inventory horizontally in and out of Bottling Group's warehouse. (Doc. 60 ¶ 9) Bottling Group contracted with WTI to "design, supply, install, service, and maintain [the] SRMs and all related technologies, systems and components."[3] (Doc. 60 ¶¶ 10, 11)

An SRM malfunctioned, and a Bottling Group supervisor notified William, a WTI employee, and asked that WTI repair the SRM. (Doc. 60 ¶¶ 18–19) To fix the SRM, WTI needed to replace a chain on the malfunctioning SRM's motorized platform. (Doc. 60 ¶¶ 20–23) Bottling Group ordered a replacement chain from Westfalia in Germany and another replacement chain from a company named Motion Industries. (Doc. 60 ¶¶ 20, 28–29) The replacement chain from Motion Industries arrived first. (Doc. 60 ¶¶ 27–28) Brown examined the replacement chain, determined that the replacement chain "should not be used because it did not have the appropriate linkage system," and recommended that Bottling Group use the other replacement chain scheduled to arrive from Germany. (Doc. 60 ¶¶ 30–31) After a

---

[3] According to the third-party complaint, WTI is "the exclusive distributor in North America of equipment and machinery manufactured in Germany" by Westfalia. (Doc. 61 ¶ 7)

Bottling Group supervisor "overruled" William's suggestion (Doc. 60 ¶ 32), WTI and William "followed . . . instructions and installed the Motion Industr[ies] chain." (Doc. 60 ¶¶ 32, 33)

The next day the chain broke for "the very reason" that WTI predicted. (Doc. 60 ¶ 40)  While WTI employees repaired the SRM, the motorized platform "was placed on" safety brackets that "were not properly matched with the ordered brackets" and "were not designed to fit securely into" the SRMs.  (Doc. 60 ¶¶ 14, 47–48)  While William and another WTI employee worked underneath the motorized platform, a Bottling Group employee inadvertently activated the motorized platform and caused the platform to "push downward."  (Doc. 60 ¶¶ 16, 54–55)  The downward force of the motorized platform "overcame the capacity of the non-conforming safety brackets" and "crashed to the floor."  (Doc. 60 ¶ 56)  The motorized platform injured William and killed the other WTI employee.  (Doc. 60 ¶ 56)

William sues Bottling Group and alleges that Bottling Group either directly or vicariously acted negligently (1) by overruling WTI's recommendation to not use the Motion Industries chain, (2) by failing to maintain adequate procedures and policies to "control the potential energy in the SRM and [the motorized platform]" and (3) by

activating the motorized platform while William worked underneath the platform.[4] Linda sues Bottling Group and Westfalia for loss of consortium.

Bottling Group asserts a third-party complaint against WTI for "strict product liability" (Count I), for negligence (Count II), for breach of a written warranty (Count III), for breach of a contract (Count IV), for breach of two contractual indemnity obligations (Counts V and VI), and for common-law indemnity (Count VII). Under Rule 12(b)(6), Federal Rules of Civil Procedure, WTI moves (Doc. 64) to dismiss each count in the third-party complaint.

## DISCUSSION

**1. Impleader**

Under Rule 14(a), a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to [the defendant] for all or part of" the plaintiff's claim against the defendant. "Underlying Rule 14 is a desire to promote economy by avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008) (Merritt, J.) (internal quotation marks omitted). Also, a defendant may implead a third party "only if that third [party's] liability on that claim is in some way

---

[4] William sues Westfalia for strict liability, negligence, and breach of warranty.

dependent upon the outcome of the main claim." *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987); *accord Mitchell v. Hood*, 614 Fed. Appx. 137, 140 (5th Cir. 2015) (per curiam) ("[R]ather, for the impleaded claim to be proper, the potential liability of the third-party defendant must be contingent upon the outcome of the original claim.").

Impleader is not proper if the defendant asserts "a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *Olavarrieta*, 812 F.2d at 643; *accord Mitchell*, 614 Fed. Appx. at 140. "The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory." Wright & Miller, *Federal Practice & Procedure*, Vol. 6, § 1446 (3d ed. 2016).

**2. Claim for Strict Product Liability and for Negligence**

Asserting, respectively, a claim for strict product liability and for negligence, Counts I and II allege that WTI breached a duty to install a "non-defective" safety bracket, breached a duty to install a "power control system" that could not activate during maintenance of a motorized platform, breached a duty to adequately train WTI employees, and breached a duty to adequately warn Bottling Group about the risks of using a safety bracket to support a motorized platform. (Doc. 61 ¶¶ 32–56) In essence, Counts I and II assert claims for contribution and allege that WTI's torts

partially or completely caused William's injuries.[5]  Rule 14 "permits third-party contribution actions if the governing substantive law recognizes a right of contribution."  *Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, 2016 WL 3027552, at *14 (D.S.C. May 27, 2016) (Childs, J.); *accord* Wright & Miller, § 1446 (stating that a defendant may implead a third party "only when a right to relief exists under the applicable substantive law; if it does not, the impleader claim must be dismissed").

Bottling Group and WTI agree that Florida law applies to Counts I and II. (Doc. 64 at 4; Doc. 69 at 7–9)  Section 768.31(2), Florida Statutes, limits a tortfeasor's right of contribution to a circumstance in which the tortfeasor and another person "become jointly or severally liable in tort for the same injury" and in which the tortfeasor pays "more than her or his pro rata share of the common liability."  However, Section 768.81(3) abolishes joint and several liability in a "negligence action" and a "products liability action," each of which by definition includes an action "based upon a theory of strict liability [or] negligence."  Under Section 768.81(3), instead of entering judgment based on joint and several liability, a court enters judgment "against each party liable on the basis of such party's percentage of fault."  Because Bottling Group can only be liable for William's injuries

---

[5] "Contribution is defined as the tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." *United States v. Atl. Research Corp.*, 551 U.S. 128, 138 (2007) (quoting Black's Law Dictionary 353 (8th ed. 2004)).

to the extent of Bottling Group's percentage of fault, Bottling Group cannot seek contribution from WTI. *See Zazula v. Kimpton Hotels & Restaurants, L.L.C.*, 2011 WL 1741906, at *1 (S.D. Fla. May 2, 2011) (Brown, Mag. J.) (stating that Section 768.81(3) "has essentially 'rendered obsolete' a claim for contribution in a negligence case" (quoting *T & S Enterprises Handicap Accessibility, Inc. v. Wink Indus. Maint. & Repair, Inc.*, 11 So. 3d 411, 413 (Fla. 2d DCA 2009) (Dakan, J.))). Thus, Counts I and II fail to state a claim.

**3. Claims for Breach of a Master Purchase Agreement**

Count III claims that WTI breached an express warranty in a "master purchase agreement" between WTI and Pepsi-Cola Advertising and Marketing, Inc. (PCAM),[6] Count IV claims that WTI breached the master purchase agreement's requirement that WTI "take all necessary precautions for the safety" of WTI's employees, and Count V claims that WTI failed to indemnify in accord with the master purchase agreement. (Doc. 61 ¶¶ 57–76) WTI argues that Counts III, IV, and V fail to state a claim because Bottling Group is not a signatory of the master purchase agreement. (Doc. 64 at 11–14) *See Greenacre Properties, Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. 2d DCA 2006) (Altenbernd, J.) ("As a general rule, a person who is not a party to a contract cannot sue for a breach of the contract even if the person receives some incidental benefit from the contract."); *see also Walden Residential Properties, Inc. v.*

---

[6] The master purchase agreement states that PCAM is a wholly owned subsidiary of Pepsi. (Doc. 1 at 22)

*Genlyte Thomas Group, LLC*, 2003 WL 26112596, at *5 (M.D. Fla. Apr. 4, 2003) (Corrigan, J.) (holding that under Florida law "a plaintiff cannot maintain a breach of warranty action in the absence of privity").

To sue for breach of contract, a "third party must establish that the contract either expressly creates rights for them as a third party or that the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member." *Rao*, 933 So. 2d at 23. The master purchase agreement states that the agreement "is made by and between" WTI and PCAM for "the benefit of each of the individual 'Buyers' as set forth and defined" in the agreement. (Doc. 61 at 22) The master purchase agreement defines "Buyers" to include Pepsi's wholly owned subsidiaries (Doc. 61 at 22), and the third-party complaint alleges that Bottling Group is a wholly owned subsidiary of Pepsi. (Doc. 61 ¶ 2) Because the third-party complaint sufficiently alleges that Bottling Group is an intended third-party beneficiary of the master purchase agreement, WTI's argument fails.[7]

---

[7] WTI argues that Florida law governs Bottling Group's claims for breach of the master purchase agreement but ignores the agreement's choice-of-law provision, which states that the agreement "will be construed and governed in accordance with" New York law. (Doc. 61 at 34) Regardless, "if no conflict exists between two bodies of law the court does not need to make a choice of law determination." *AIG Premier Ins. Co. v. RLI Ins. Co.*, 812 F. Supp. 2d 1315, 1321 (M.D. Fla. Sep. 15, 2011) (Conway, J.) (applying Florida law); *cf. Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 2016 WL 1126565, at *11 (W.D.N.Y. Mar. 21, 2016) (Wolford, J.) ("Under New York law, a third-party beneficiary to a contract has the same rights as the contracting parties."); *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 2016 WL 524640, at *8 (S.D.N.Y. Feb. 5, 2016) (Engelmayer, J.) ("Under New York law, parties asserting third-party beneficiary rights under a contract must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost." (internal quotations omitted)).

**4. Claim for Breach of a General Service Agreement**

Count VI alleges that WTI breached both a "preventative maintenance, inspection and service agreement" and a "general service agreement" by "failing to indemnify and hold Bottling Group harmless in light of [the Browns'] claims." (Doc. 61 ¶¶ 77–83)  However, as WTI correctly notes, the indemnity provision identified in Count VI exists in the general service agreement and not in the preventive maintenance, inspection, and service agreement.  (Doc. 61 at 60–66) Bottling Group fails to explain how a breach of an indemnity obligation in the general service agreement establishes a breach of the preventive maintenance, inspection, and service agreement.  To the extent that Count VI asserts a breach of the preventive maintenance, inspection, and service agreement, Count VI fails to state a claim.

**5. Claim for Common-law Indemnity**

Count VII claims common-law indemnity and alleges that, if "a jury determines that Bottling Group is responsible for the alleged damages claimed by the [Browns], Bottling Group is entitled to indemnity" because Bottling Group is "wholly without fault" and because William's injuries result from WTI's actions. (Doc. 61 ¶¶ 84–91)  "A claim for common law indemnity is one that shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which

the former is held liable." *Florida Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc.*, 171 So. 3d 194, 196 (Fla. 5th DCA 2015) (Lambert, J.) (internal citations omitted). To state a claim for common-law indemnity under Florida law, a party must allege (1) that "he is wholly without fault," (2) that "the party from whom he is seeking indemnity is at fault," and (3) that "he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity." *Florida Peninsula Ins. Co.*, 171 So. 3d at 196.

Moving for dismissal of Count VII, WTI argues that, if Bottling Group is liable to the Browns, "it will be . . . due to [Bottling Group's] direct negligence." (Doc. 64 at 20)  Generally, a property owner "who hires an independent contractor is not liable for injuries sustained by that contractor's employees in their work." *Phillips v. Republic Fin. Corp.*, 157 So. 3d 320, 324 (Fla. 5th DCA 2015) (Murphy, J.). Exceptions to the general rule require some fault by the property owner.[8] The

---

[8] *See Fuentes v. Sandel, Inc.*, 189 So. 3d 928, 932 (Fla. 3d DCA 2016) (Rothenberg, J.) (stating that an exception to the general rule applies if "the property owner fails to warn the contractor about concealed dangers not inherent in the work of which the owner had actual or constructive knowledge and which were unknown to the contractor or could not have been discovered through due care"); *Strickland v. Timco Aviation Services, Inc.*, 66 So. 3d 1002, 1006 (Fla. 1st DCA 2011) (Rowe, J.) ("There are two exceptions to the general rule. An owner can be held liable for damages sustained by an employee of an independent contractor where (1) the property owner actively participates in or exercises direct control over the work; or (2) the property owner negligently creates or negligently approves a dangerous condition."); *Ahl v. Stone Sw., Inc.*, 666 So. 2d 922, 924 (Fla. 1st DCA 1995) (Ervin, J.) (holding that, as an exception to the general rule, liability "may be imposed" "if the owner performs one or more specific acts of negligence").

third-party complaint alleges that William Brown is a WTI employee (Doc. 61 ¶ 16), and the master purchase agreement and the general service agreement identify WTI as an independent contractor. (Doc. 61 at 30, 66) Thus, to succeed in their claims against Bottling Group, the Browns must demonstrate at least some fault by Bottling Group. Thus, Count VII fails to state a claim.[9]

## CONCLUSION

Accordingly, WTI's motion (Doc. 64) to dismiss is **GRANTED IN PART**. Counts I, II, and VII of the third-party complaint are **DISMISSED**. Also, to the extent that Count VI claims a breach of the preventive maintenance, inspection, and service agreement, Count VI is **DISMISSED**. Count VI's claim for breach of the general service agreement remains. As to Counts III, IV, and V, the motion (Doc. 64) to dismiss is **DENIED**.

ORDERED in Tampa, Florida, on July 18, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[9] Bottling Group's response to WTI's motion to dismiss offers no rebuttal to WTI's argument on this issue.